UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ST. ANN,

           Plaintiff,

                              Case No. 5:15-cv-11770
v.                            Judge Judith E. Levy
                            Magistrate Judge Anthony P. Patti

TODD MCLEAN,
DEAN POTILA,
SAMUEL MORGAN and
THOMAS HAYNES,

           Defendants.

_____/

## REPORT AND RECOMMENDATION REGARDING MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 16)

**I.**    **RECOMMENDATION**:  The Court should grant in part and deny in part

the MDOC Defendants' motion for summary judgment (DE 16), as Plaintiff has

only exhausted his administrative remedies with regard to certain claims against

Defendants in the first amended complaint (DE 6).  In sum,

a.   Grievance Identifier SRF-2012-12-2149-26A, which alleges denial of proper medical treatment, does not operate to exhaust Plaintiff's claims against the MDOC Defendants – each of whom is described as an ARUS (Assistant Resident Unit Supervisor) at SRF....................................................................13

b.   Grievance Identifier SRF-2012-12-2167-28A does not appear to concern McLean, Potila, Morgan or Haynes...................................................................16

c.   Plaintiff did not exhaust his administrative remedies as to any claims set forth in Grievance Identifier SRF-2013-10-1744-01G, as he did not appeal this grievance to Step III, and it concerns healthcare ................................................. 18

d.   Grievance Identifier SRF-2013-11-2026-28B, although appealed through Step III, concerns health care and does not operate to exhaust Plaintiff's claims against the correctional officer defendants as set forth in the first amended complaint ............................................................................................................. 19

e.   Grievance Identifier SRF-2014-03-0468-28B operates to exhaust only some of the claims against Defendants within Plaintiff's first amended complaint ...... 20

f.   Grievance Identifier SRF-2015-08-1386-17b was not exhausted before Plaintiff's original and amended complaints were filed, as is required by 42 U.S.C. § 1997e(a) ................................................................................................. 31

g.   Similarly, Grievance Identifier SRF-2015-11-02220-03B, and the October 27, 2015 event seemingly underlying it, occurred after the filing of Plaintiff's original and amended pleadings ......................................................................... 34

## II.   REPORT:

### A.   Background

Plaintiff David St. Ann (#741290) is currently incarcerated at the Michigan Department of Corrections (MDOC) Muskegon Correctional Facility (MCF). (DEs 9, 11.)[1]  On May 15, 2015, while incarcerated at the MDOC's Saginaw Correctional Facility (SRF) in Freeland, Michigan, Plaintiff filed the instant lawsuit *pro se* against (1) Todd McLean, described as an SRF Assistant Resident

---

[1] Plaintiff is serving a life sentence imposed on September 16, 2009 in Case No. 09010620-01-FH (Wayne County).  (*See* www.michigan.gov/corrections, "Offender Search.")

Unit Supervisor (ARUS); (2) Zummer, described as an SRF Resident Unit Manager (RUM), (3) Dean Potila, described as an SRF ARUS; and (4) Obel Winn, described as the SRF Warden.  (*See* DE 1 at 1, 10-11; *see also* DE 15.)

On November 6, 2015, this Court entered an order granting Plaintiff's motion to amend and directing the Clerk of the Court to delete Defendants Zummer and Winn but add Defendants Morgan and Haynes.  (DEs 5, 8.) Therefore, Plaintiff's August 28, 2015 verified, first amended complaint against McLean, Potila, SRF ARUS Samuel Morgan and SRF ARUS Thomas Haynes is the operative pleading in this case.  (*See* DE 6; *see also* DE 12, 14.)  The operative pleading alleges civil rights violations and a common law claim for intentional infliction of emotional distress.  (DE 6 ¶¶ 173-181.)

### B.    The Instant Motion

Judge Levy has referred this case to me for pretrial matters.  (DE 18.) Currently before the Court is the MDOC Defendants' February 2, 2016 motion for summary judgment, which presents the sole argument that Defendants are entitled to dismissal of Plaintiff's complaint, as he "did not properly complete the grievance process regarding his Complaint allegations[,]" or "did not file a grievance regarding his Complaint allegations against any Defendant."  (DE 16 at 4, 9-17.)

3

Plaintiff's deadline to respond was extended by way of motions and orders. (*See* DEs 17, 19, 20, 21.)  Plaintiff's response, dated May 31, 2016, was filed with the Court on June 2, 2016.  (DE 22.)[2]

### C.    Fed. R. Civ. P. 56

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ."  *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of

---

[2] Since briefing closed on Defendants' dispositive motion (DE 16), Plaintiff has filed **(a)** a second motion for leave to amend his complaint, whereby he seeks to add ARUS Buczek as a defendant and add Count 4 (DE 23 at 11), and **(b)** what amounts to a proposed and verified second amended complaint (DEs 24 & 25).  Given the age of Defendants' February 2, 2016 motion for summary judgment (DE 16), the undersigned will address it first, followed by Plaintiff's pending motion to amend (DE 23), should an opinion on the same be necessary.  *See* 28 U.S.C. §§ 471-482 ("Civil Justice Expense and Delay Reduction Plans").

fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

5

### D.  Discussion

For the following reasons, the Court should grant in part and deny in part the MDOC Defendants' motion for summary judgment.

### 1.  Plaintiff's August 28, 2015 first amended complaint (DE 6) sets forth three causes of action against four SRF corrections officers.

The facts underlying Plaintiff's verified, amended complaint span the period from December 6, 2012 to May 1, 2015 and concern, among other things, an alleged assault, health care requests, grievances, misconduct tickets, a deadline in his case involving a petition for writ of habeas corpus,[3] security classification level and intent to file a lawsuit regarding the alleged assault.  (DE 6 ¶¶ 12-172, DE 6 at 43-44.)  Before considering whether the claims set forth in Plaintiff's first amended complaint have been exhausted, it is helpful to summarize the 160 paragraphs of facts pleaded in Plaintiff's first amended complaint, particularly Plaintiff's express mention of Defendants McLean, Potila, Morgan and Haynes.

### a.  It is during Plaintiff's November 29, 2012 to January 27, 2014 assignment to Cell 700-173 at SRF that the events underlying his amended complaint begin.

---

[3] St. Ann was a petitioner in *St. Ann v. Rapelje*, Case No. 2:13-cv-11720-PJD-PJK (E.D. Mich.).  In the instant case, Plaintiff alleges that his April 17, 2014 attempt to visit the law library – presumably to satisfy an April 28, 2014 deadline in his habeas case – was rejected, because he had "to go back to his unit and [could not] attend law library due to being on top-lock."  (DE 6 ¶¶ 85-93; *see also* DE 1-1 at 18-22, 24-25.)

Plaintiff claims he was assaulted on December 6, 2012 by Officer Mark Richard and others.  (DE 6 ¶¶ 12-17.)  From December 7, 2012 through December 8, 2012, Plaintiff kited health care and wrote to the Warden and Assistant Warden.  (DE 6 ¶¶ 18-22, DE 1 at 54-55, 61.)[4]  On December 10, 2012, Plaintiff spoke to Defendant Morgan, as well as RUM Culbersome and Sgt. Chicowiski, about the alleged assault.  (DE 6 ¶¶ 24-25, DE 1 at 57.)  According to Plaintiff, he kited health care again on December 10, 2012, and was seen by health care on December 11, 2012 and by a Physician's Assistant on January 19, 2013.  (DE 6 ¶ 26-27; *see also* DE 6 ¶ 30, DE 1 at 59, 61.)

Approximately one year later, on January 27, 2014 – and seemingly in conjunction with Plaintiff's ticket of the same date for disobeying a direct order and his January 28, 2014 security classification screen (which set his actual placement at Level IV), Plaintiff was moved to SRF's 600 unit.  (DE 6 ¶¶ 41-42, DE 1 at 75-76.)  He remained there at least through March 12, 2014, the date of A. Supernaw's kite response and the date Plaintiff claims to have been awakened late at night to be moved.  (DE 1 at 97, 99-100; DE 1-1 at 1, 40; DE 6 ¶¶ 53-57.)  In fact, it seems he remained in the 600 unit on April 22 and April 24, 2014.  (DE 1-1

---

[4] Oddly, the attachment to which Plaintiff refers in support of the alleged December 7, 2012 health care kite is an MDOC Health Care Request dated November 7, 2012.  (DE 6 ¶¶ 18-20, DE 1 at 52.)  Still, as noted above, the record does contain an MDOC Kite Response dated December 7, 2012.  (DE 1 at 61.)

at 36, 38, 51.)  According to Plaintiff, he was moved from segregation to the 500 or 1200 unit on April 28, 2014.  (DE 6 ¶ 114, DE 16-3 at 21-22.)

> **b.   Plaintiff's claims against Defendant Morgan are based on the alleged events of 2013 and 2014 (during which time Plaintiff had been incarcerated in SRF Units 700, 600 and 1200).**

Aside from allegedly mentioning the aforementioned assault to ARUS Morgan, Plaintiff's claims against this defendant appear to concern the location of his cell during 2013 (Cell 700-173) and/or remaining at Level IV.  Specifically, Plaintiff alleges that, for nearly one year prior to being locked up on January 27, 2014, he spoke to Defendant Morgan on several occasions, seeking to be moved. (DE 6 ¶¶ 24, 43-45.)

Additionally, citing his September 26, 2014 job assignment as a unit porter, Plaintiff claims that during "the entire duration of working as a unit porter, that he was constantly harassed by ARUS Morgan due to the fact that he did not want plaintiff working as a unit porter."  (DE 6 ¶¶ 140-141, DE 1-1 at 55.)  For example, he alleges that:

- On or around October 14, 2014, Plaintiff asks ARUS Morgan when he [Plaintiff] was going to return to level two.

- ARUS Morgan responded to Plaintiff St. Ann, "St. Ann, you're not going back to level two, so quit asking!"

- In November of 2014, while Plaintiff was sweeping the floor on A-wing in 1200 unit, an inmate who was in [his] cell asked plaintiff what time it was.

8

- Plaintiff responded that he didn't know but would check the unit's clock to find out.

- [During] this time, Plaintiff was unaware that he was being watched by ARUS Morgan.

- ARUS Morgan stated to Plaintiff, "St. Ann, what are you doing? You know you're not supported to be talking to inmates on A-wing.["]

- ARUS Morgan then stated to Plaintiff, "St. Ann, do you want to lose your job? I don't know why they gave you that job in the first place!"

*See* DE 6 ¶¶ 142-148.) Thus, Plaintiff claims that, on December 12, 2014, he "spoke to Officer Luna and ARUS Haynes, stating that he no longer wanted to work as a unit porter." (DE 6 ¶ 149.) At some point, no later than early 2015, Plaintiff was moved to SRF's 1200 unit (cell 1200-134). (DE 1-1 at 62, 64.)

> **c.    Plaintiff's claims against Defendants McLean and Potila occurred during his confinement to SRF's 600 unit (600-158 and 600-153).**

Plaintiff's claims against Defendants ARUS McLean and ARUS Potila appear to be based upon "constant harassment from both of the ARUS[s] in 600 unit." (DE 6 ¶ 117; *see also* DE 6 ¶¶ 118-131.) For example, Plaintiff claims he spoke to Defendant McLean on or about February 25, 2014 regarding a return to Level II, at which time McLean called Plaintiff a "dumb fuck" and a "trouble maker who likes to file grievances." (DE 6 ¶ 49.) Plaintiff further claims that Defendant Potila chimed in to this conversation, stating, "Who is that? Is that

9

inmate St. Ann?  Yeah, he's a dumb fuck!["]  (DE 6 ¶ 50.)  Plaintiff also alleges

that, on March 25, 2014, Defendant ARUS McLean said:  "St. Ann, I see you

hav[e]n't learned your lesson from filing all of those grievances, huh?["]  (DE 6 ¶

68.)  Additionally, having described the alleged events of April 16, 2014, for which

he received a Class I misconduct and was eventually found guilty of possession of

a weapon, Plaintiff apparently believes that McLean and Potila were attempting to

"set him up" by placing Plaintiff in the same cell as Timothy Schlicker (#857229).

(DE 6 ¶¶ 76-82, 84, 94-111; DE 1-1 at 16, 27, 38.)  Also, Plaintiff claims

Defendant McLean answered kites sent to Zummer.  (DE 6 ¶¶ 121-122.)

### d.    Plaintiff's claims against Defendant Haynes

Finally, Plaintiff's claims against Defendant ARUS Thomas Haynes appear

to concern Haynes's alleged responses to two incidents.  Plaintiff claims that, on

February 10, 2014, he kited Haynes about threats and extortion by STG gang

members, but there was no response.  (DE 6 ¶¶ 163-164.)[5]  Plaintiff also alleges

that he spoke with Defendant Haynes on April 28, 2015 about receiving his

"security classification screen" and "returning to level two."  (DE 6 ¶¶ 166-167.)

Yet, Haynes allegedly replied, "there is no need to worry about rec[ei]ving a

security classification screen or going back to level two."  (DE 6 ¶ 168.)

---

[5] The only February 10, 2015 kite currently in the record is Plaintiff's February 10,
2015 MDOC Health Care Request.  (DE 6 ¶¶ 156-162, DE 1-1 at 62.)

### e.   Plaintiff's claims for relief

In the end, Plaintiff claims that, "before experiencing constant harassment and retaliation from prison officers and staff at SRF, . . . he was in the process of filing his lawsuit against Officer Richard for assault."  (DE 6 ¶ 171.)  Instead, Plaintiff alleges, he "chose not to pursue litigation against Officer Richard out of fear due to the above mistreatment and harassment that he has suffered at the hands of SRF's staff and prison officers."  (DE 6 ¶ 172.)  He then sets forth three causes of action:  (1) retaliation in violation of his First Amendment rights; (2) a violation of his Fourteenth Amendment right to equal protection; and (3) a state-law cause of action for intentional infliction of emotional distress.  (DE 6 ¶¶ 173-175, 176-178, 179-181.)  The prayer for relief seeks compensatory, punitive and nominal damages, as well as declaratory and injunctive relief and an award of fees, costs and interest.  (DE 6 at 40-42.)

### 2.   Plaintiff must exhaust his administrative remedies as to any such claims before bringing related claims to this Court.

Lawsuits by prisoners are governed by 42 U.S.C. § 1997e.  Among other things, this statute provides:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a) ("Applicability of administrative remedies").

11

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Moreover, "the PLRA exhaustion requirement requires *proper* exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Thus, Plaintiff was required to properly exhaust his claims against Defendants McLean, Potila, Morgan and Haynes by complying with the MDOC's Policy Directive 03.02.130, which concerns prisoner/parolee grievances.

However, "[a] PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies." *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).  Stated otherwise, "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).

> **3.  Of the multiple grievances which are part of the record in this case, only SRF-2014-03-00468-28b exhausts *some* of Plaintiff's claims against Defendants McLean, Potila, Morgan and Haynes within the first amended complaint.**

12

The record contains evidence of seven (7) grievances.[6]  Given that Defendants' pending motion for summary judgment is based upon an alleged exhaustion of administrative remedies – and taking them one-by-one - what follows is a review of each of these grievances and its effect upon the potential exhaustion of Plaintiff's claims against Defendants within the first amended complaint:

    **a.**    **Grievance Identifier SRF-2012-12-2149-26A, which alleges denial of proper medical treatment, does not operate to exhaust Plaintiff's claims against the MDOC Defendants – each of whom is described as an ARUS (Assistant Resident Unit Supervisor) at SRF.**

This grievance is dated December 12, 2012 and was received at Step I on December 18, 2012.  Here, Plaintiff alleges he is "being denied proper medical treatment by SRF Facility."  Vincent Turner responded at Step I on either December 21 or December 27 of 2012.  (*See* DE 1 at 50, 63; DE 16-3 at 35-36, 44 & 58; DE 22 at 22.)  Plaintiff's Step II appeal was received on January 25, 2013, and the Step II response is dated January 30, 2013.  Plaintiff's Step III appeal appears to have been accompanied by a 7 page letter dated February 2, 2013.  The

---

[6] To be sure, Plaintiff does allege that he filed a Step I grievance on or about April 17, 2014 concerning retaliation.  (DE 6 ¶ 83.)  However, the record does not contain evidence of such a grievance; instead, it appears Plaintiff may be referring to either a kite to "RUM Zummer," dated April 17, 2014 (DE 1-1 at 18, DE 22 at 81) or a letter to then MDOC Director (Daniel H.) Heyns dated April 17, 2014 (DE 1 at 86-91, DE 16-3 at 18-20).

grievance reached Step III on February 7, 2013, and the Step III grievance response is dated May 7, 2013.  (DE 1 at 50, 63, 65; DE 16-3 at 3, 32-44.)

Although appealed through Step III, the Court should agree with the MDOC Defendants that "[t]his grievance does not concern any of the remaining claims asserted by St. Ann . . . ."  (DE 16 at 15-16.)  To begin, the Step I grievance form lists the "date of incident" as December 7, 2012 – *the date Plaintiff allegedly kited healthcare* about the alleged December 6, 2012 assault.  (*See* DE 6 ¶¶ 18-20, DE 16-3 at 35; *see also* DE 6 ¶ 21.)  Relatedly, this date is *before* the operative pleading's first express mention of a defendant by name - speaking to Defendant ARUS Morgan on December 10, 2012 (DE 6 ¶ 24.)[7]

More importantly, the content of the Step I grievance, while mentioning the alleged assault by prison staff or the alleged use of excessive force by correctional officers, clearly relates to medical treatment, or the lack thereof, not to the events

---

[7] To be sure, the "resolution" portion of this grievance form states:  "I kited the ARUS and the RUM in my unit[,]" on December 10, 2012; however, this step is a *precursor* to filing the grievance itself.  (DE 16-3 at 35.) "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff."  MDOC PD 03.02.130 ¶ P, effective July 9, 2007.  Moreover, the content of what is being grieved remains the same.

14

which made it necessary, beginning with the words, "I'm being denied proper
medical treatment[,]" noting that "I kited [the] medical department[,]" and further
stating: "SRF is attempting to cover up misconduct by making me wait five days
to see nurse, denying me medical treatment, waiting for my bru[i]ses to heal on
their own, so they won't have to document them." (*Id*. at 35.)[8] Furthermore,
Plaintiff's 7-page letter dated February 2, 2013, which seemingly accompanied
Plaintiff's Step III appeal, takes issue with the Step II response, in part, because
"[t]he issue is about lack of medical care. They've switched up the issues by
making it about the ass[a]ult by prison staff when the topic is about lack of medical
care." (*Id*. at 42.) Finally, Plaintiff's own August 28, 2015 first amended
complaint seemingly describes this particular grievance as "against health care for
not rec[ei]ving proper medical treatment." (DE 6 ¶ 28.) For these reasons, the
Court should conclude that Grievance Identifier SRF-2012-12-2149-26A is, as
Plaintiff describes, a grievance "against health care for not rec[ei]ving proper
medical treatment[,]" (DE 6 ¶ 28) and, therefore, does not operate to exhaust
Plaintiff's administrative remedies as to his claims against these MDOC
*corrections officer* Defendants within the August 28, 2015 first amended complaint
(DE 6).

---

[8] Warden Rapelje's January 30, 2013 Step II grievance appeal response
acknowledges: "Grievant is grieving that he has not received medical care for the
aforementioned injuries, but not the alleged assault itself. Therefore, the grievance
should be coded '12e1' and responded to by Health Care staff." (DE 16-3 at 34.)

### b.    Grievance Identifier SRF-2012-12-2167-28A does not appear to concern McLean, Potila, Morgan or Haynes.

This grievance is dated December 12, 2012 and was received at Step I on December 20, 2012.  It concerns the alleged December 6, 2012 assault by "Officer Richard and another unknown Officer."  It was rejected at Step I as duplicative to SRF-2012-12-2149-26A.  It was rejected at Step II on January 22, 2013, due to a policy violation.[9]  The grievance reached Step III on February 4, 2013, and the Step III grievance response is dated May 7, 2013.  (DE 1 at 67, DE 16-3 at 4, 46-58.)

> As The United States Supreme Court has explained:
>
> Compliance with prison grievance procedures . . . is all that is required by the PLRA to "properly exhaust."  The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (emphasis added).  The relevant MDOC Police Directive provides that "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ("Prisoner/Parolee Grievances") ¶ R, effective July 9, 2007.  Officer Richard is not a defendant in this case.

---

[9] According to Warden Rapelje, it was "unknown which grievance the Grievant [wa]s actually appealing[,]" as Plaintiff had "submitted the appeal form for grievance SRF-2012-12-2167-28A, but included the Step I grievance for SRF-2012-12-2149-26A."  (DE 1 at 67, DE 16-3 at 57.)

Moreover, it does not appear that the other "unknown officer" alleged to have been involved in the attack is one of the four defendants (McLean, Potila, Morgan or Haynes) in the case at bar; if so, the Court would expect Plaintiff to have identified the "unknown officer" within the paragraph of his complaint that describe the alleged December 6, 2012 assault, instead of just referring to "et al." (DE 6 ¶ 12.) Instead, after describing the alleged subsequent threats by Richard (DE 6 ¶¶ 13-14), summarizing Richard's version of events as documented in the Step I grievance response (DE 6 ¶¶ 15-16), noting that Richard did not issue Plaintiff a ticket or take him to segregation (DE 6 ¶ 17), noting the subsequent kite(s) to health care and letters to Warden Rapelje and Deputy Warden Winn (DE 6 ¶¶ 18-22, DE 6 at 52, 54-55), and seemingly describing this grievance as filed "against Officer Mark Richard for assault[,]" (DE 6 ¶ 23), the first time one of the defendants is named in the amended complaint is the mention of Plaintiff speaking to Defendant ARUS Morgan on December 10, 2012 (DE 6 ¶ 24.)

Because Officer Richard is not a defendant in this case, and because it does not appear that the other "unknown officer" alleged to have been involved in the attack is one of the four defendants, Grievance Identifier SRF-2012-12-2167-28A would not operate to exhaust Plaintiff's administrative remedies with regard to the claims set forth against Defendants McLean, Potila, Morgan or Haynes in the first amended complaint. In other words, the Court should agree with Defendants that

this grievance "does not concern any of the remaining claims asserted by St. Ann . . . ."  (DE 16 at 16.)

> **c.**    **Plaintiff did not exhaust his administrative remedies as to any claims set forth in Grievance Identifier SRF-2013-10-1744-01G, as he did not appeal this grievance to Step III, and it concerns healthcare.**

This grievance concerns an alleged extra $5.00 debit to his prisoner account on June 23 or 26, 2013 for healthcare in violation of MDOC PD 03.04.101 ("Prisoner Health Care Copayment") ¶ F, even though he paid the one-time fee in December 2012.  The Step I grievance form is dated October 2, 2013 and was received at Step I on October 4, 2013.  The Step I response and review are dated October 15, 2013, but the contents of this response do not seem to be a part of the record in this case.  (DE 1 at 71, 69.)  Thus, the basis for the Step I response is unclear.

It appears that this grievance was not appealed to Step III, and thus was not exhausted.  (*See* DE 16-3 at 3-4.)[10]  However, even if it had been appealed through Step III, the substance of the grievance does not encompass the claims against Defendants in Plaintiff's first amended complaint.  Although the grievance notes that Plaintiff kited healthcare, a RUM, an ARUS, and the Grievance Coordinator in

---

[10] "Complaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies *only* when filed as a grievance through all three steps of the grievance process in compliance with this policy."  MDOC PD 03.02.130 ¶ B, effective July 9, 2007 (emphasis added).

18

an attempt to resolve the issue before writing the grievance, the substance of this grievance again takes issue with *healthcare*, not the Defendant SRF corrections officers.  (DE 1 at 71.)  Therefore, this grievance cannot operate to exhaust Plaintiff's administrative remedies as to his claims against Defendants McLean, Potila, Morgan or Haynes in the first amended complaint.

> **d.** **Grievance Identifier SRF-2013-11-2026-28B, although appealed through Step III, concerns health care and does not operate to exhaust Plaintiff's claims against the correctional officer defendants as set forth in the first amended complaint.**

This grievance is dated November 8, 2013 – oddly, as it concerns a much earlier June 23, 2013 "date of incident" - and was received at Step I on November 20, 2013.  It, too, concerns the removal of $5.00 from Plaintiff's account.  The grievance was "deemed vague and rejected at step I[,]" because Plaintiff had not "provided any specific information to corroborate [his] allegation of retaliation for a 2012 incident that didn't involve health care but unit staff."  Plaintiff's Step II grievance appeal is dated November 26, 2013,[11] it was received at Step II on December 5, 2013, and Warden Rapelje's response is dated December 12, 2013.

---

[11] In a letter dated November 30, 2013, which this report assumes was provided to prison officials during the processing of this grievance, Plaintiff explains, among other things, "I'm filing this grievance because I'm being retaliated against by healthcare for prior grievances filed against them for denial of treatment and another grievance that was filed against prison guards for physical ass[au]lt against me."  (DE 16-3 at 30.)

The grievance reached Step III on December 20, 2013, and the Step III grievance response is dated February 14, 2014.  (DE 1 at 73, DE 16-3 at 3, 26-30.)

Although this grievance was appealed through Step III, this grievance does not encompass the claims at bar.  True, as Plaintiff explains in his amended complaint, "[o]n June 26, 2013, plaintiff rec[ei]ved a statement that health care had taken an extra $5.00 dollar co-payment from his account for seeking medical treatment regarding the assault that occurred on December 6, 2012."  (DE 6 ¶ 34.)  However, the operative pleading is brought against Defendants McLean, Potila, Morgan and Haynes, each of whom is described as an ARUS (Assistant Resident Unit Supervisor) at SRF.  (DE 6 ¶¶ 8-11.)  In other words, the grievance is, yet again, brought against health care, and Defendants are not health care providers.  Therefore, this grievance likewise does not operate to exhaust Plaintiff's administrative remedies as to his claims against Defendants McLean, Potila, Morgan and Haynes, which are the subject of the first amended complaint.

  **e.** **Grievance Identifier SRF-2014-03-0468-28B operates to exhaust only some of the claims against Defendants within Plaintiff's first amended complaint.**

This grievance is dated March 19, 2014 – concerning a much earlier January 27, 2014 "date of incident" - and was received at Step I on March 26, 2014.[12]  It complains:

> I'm being kept in level four Maximum Security's Disciplinary Unit. I'm level two status.  There is no logical or reasonable justification for having me over here this long.  I've been experiencing a pattern of retaliation for filing past grievances.[[13]]

(DE 1-1 at 7-8.)  The Step I response is dated March 26, 2014 and, after quoting MDOC PD 05.01.130 ("Prisoner Security Classification") ¶ A, addresses Plaintiff's claim *on the merits* by stating, "You currently lock in a level IV general population unit.  You have not stated a violation of policy or procedure.  This grievance is rejected at step I."  (DE 16-3 at 17.)

Plaintiff's Step II grievance appeal dated April 3, 2014 was received on April 14, 2014.  (DE 16-3 at 15.)  Two days later, on April 16, 2014, Acting Warden Winn responded, addressing Plaintiff's grievance *on the merits* by stating:

> The Grievance Coordinator correctly rejected the grievance at Step I. By Grievant's own admission, he refused to lock somewhere and

_____

[12] Plaintiff claims that he originally filed this grievance on March 10, 2014 (again concerning a much earlier January 27, 2014 "date of incident"), but it was not processed.  (DE 6 ¶¶ 51-52; *see also* DE 1 at 93-95.)

[13] Plaintiff's grievance refers to attachments, but they are not evident from the record, unless he is referring to the March 10, 2014 note seemingly attached to the non-processed grievance (*see* DE 1 at 93-95) or the March 19, 2014 note to the grievance coordinator inquiring about the grievance he submitted on March 10, 2014 (*see* DE 1-1 at 8, DE 16-3 at 17).

received a major misconduct as a result.  Grievant is reminded that prisoners do not have a right to placement at a particular security level.

(DE 1-1 at 12, DE 16-3 at 16.)[14]

The following day, on April 17, 2014, Plaintiff wrote to MDOC Director Heyns.  (DE 16-3 at 18-20.)  Plaintiff's grievance reached Step III on April 24, 2014 (DE 16-3 at 3), and Plaintiff appears to have supplemented with a letter dated May 24, 2014 (DE 16-3 at 21-22, 23-24; *see also* DE 1-1 at 47-49).  The Step III grievance response is dated July 31, 2014.  In upholding the Step II decision, the Step III response states, in part:  "The response you received at Steps I & II reflect that your issue was in fact considered and appropriately investigated[,]" and "there is no additional information or basis found for relief at Step III[.]"  (DE 1-1 at 53, DE 16-3 at 14.)

For the following reasons, this grievance only operates to exhaust some of Plaintiff's claims set forth in the August 28, 2015 first amended complaint (DE 6) against the MDOC Defendants.

---

[14] That same day, during the exhaustion of this grievance, Plaintiff received a Class I misconduct for Possession of Dangerous Contraband (030) / Possession of a Weapon (029).  (DE 1-1 at 16, 27; *see also* DE 1-1 at 29-30, 32, 34, 43, 44 & 45.)  On April 24, 2014, the Possession of Dangerous Contraband (030) charge was dismissed, but Plaintiff was found guilty of the Possession of a Weapon (029) charge and given 10 days of detention (April 24, 2014 – May 4, 2014) and 30 days loss of privileges (April 24, 2014 – May 24, 2014).  (DE 1-1 at 38-39.)  These events appear to be reflected in ¶¶ 76-111 of Plaintiff's first amended complaint. (DE 6.)

      **i.**     **Plaintiff's allegations regarding the events of December 6, 2012 through December 14, 2013 (DE 6 ¶¶ 12-40, 43-45) are not the subject of SRF-00468.[15]**

Instead, this grievance is based upon the events of January 27, 2014 and clearly takes issue with the length of time he has remained at Level IV, suggesting that it is in retaliation for filing past grievances. (DE 16-3 at 15, 17.) In other words, an allegation that this extended placement at Level IV (from January 27, 2014 through March 19, 2014) is an adverse action caused by his earlier protected conduct of filing grievances is not equivalent to a grievance concerning the earlier events themselves. Therefore, this Grievance Identifier would not exhaust Plaintiff's claims against Defendant(s) concerning the events described in Plaintiff's complaint which predate January 27, 2014. (DE 6 ¶¶ 12-40, 43-45).

      **ii.**     **At most, SRF-00468 encompasses Plaintiff's allegations regarding the date of incident (January 27, 2014) through the date the Step I grievance form was completed (March 19, 2014). (DE 6 ¶¶ 41-42, 46-67).**

---

[15] It is the undersigned's opinion that ¶¶ 43-45 of Plaintiff's first amended complaint (DE 6) did not occur on January 27, 2014. Rather, Plaintiff seems to be referring to the year prior, which would roughly be the 2013 calendar year. As discussed above, the Court assumes these claims against Defendant Morgan concern the location of Plaintiff's cell during 2013 (Cell 700-173). This interpretation is buttressed by Plaintiff's February 24, 2014 letter to the SRF Warden, in which Plaintiff described the conditions of his bunk in 700 unit and stated, in part: "I had been asking A[RUS] Morgan for over a year, who at that time was the A[RUS] in 700 unit, to move me because of this problem." (DE 1 at 78-80.)

> **(1)   SRF-00468 concerns the *limited* subject of Plaintiff remaining at Level IV (or maximum security / disciplinary unit) following the February 14, 2014 expiration of his detention and loss of privileges.**

Plaintiff's amended complaint discusses and/or includes evidence of the alleged circumstances occurring from January 27, 2014 through March 19, 2014, such as:

(a)   Plaintiff's January 27, 2014 major misconduct for disobeying a direct order (DDO) (DE 6 ¶¶ 41-42, DE 1 at 75)

(b)   Plaintiff's January 28, 2014 "Security Classification Screen – Review" assessing his True Security Level as II and his Actual Placement Level as IV because "[i]nvestigation warrants increased security level." (DE 1 at 76)

(c)   The January 31, 2014 letter from the Office of Legislative Corrections Ombudsman, regarding a complaint Plaintiff had submitted (DE 6 ¶ 46, DE 1 at 82)

(d)   The February 4, 2014 finding of guilty and disposition of 10 days detention and loss of privileges (beginning February 4, 2014 and ending February 14, 2014). (DE 1 at 75)

(e)   Plaintiff's February 17, 2014 kites to the RUM and ARUS asking if he could "return to level two since I'm done with my sanctions . . . ." (DE 6 ¶ 47, DE 1 at 84)

(f)   his three-page February 24, 2014 letter to the SRF Warden (DE 1 at 78-80, DE 6 ¶ 48)

(g)   the alleged February 25, 2014 conversation between Plaintiff and Defendant McLean, into which Defendant Potila injected comments (DE 6 ¶¶ 49-50)

(h)    his March 10, 2014 first attempt to grieve the January 27, 2014 incident (DE 6 ¶¶ 51-52, DE 1 at 93-95)

(i)    his March 10, 2014 kite for mental health treatment and his March 18, 2014 conversation with SRF's psychologist (DE 6 ¶¶ 53, 61-65, DE 1 at 97, DE 1-1 at 3-5)

(j)    a March 12, 2014 late-night cell move (DE 6 ¶¶ 54-57; *see also* DE 6 ¶ 58)

(k)    an unprocessed cell inventory check list dated March 17, 2014 (DE 6 ¶¶ 59-60)

Subsequently, as outlined in his amended complaint, Plaintiff initiated his March 19, 2014, second attempt at grieving the January 27, 2014 incident (DE 1-1 at 7-8, DE 6 ¶ 66).

Grievance Identifier SRF-2014-03-00468-28B conceivably encompasses these events, as it concerns an incident dated January 27, 2014 but was not initiated until March 10, 2014 or March 19, 2014.  (*See* DE 1 at 93-95, DE 1-1 at 7-8, DE 16-3 at 17.)  Nevertheless, a fair reading of Plaintiff's March 10, 2014 Step I grievance form and the accompanying letter (DE 1 at 93-95), Plaintiff's March 19, 2014 Step I grievance form and accompanying note (DE 1-1 at 7-8, DE 16-3 at 17), and Plaintiff's April 3, 2014 Step II grievance form (DE 16-3 at 15), lead to the conclusion that SRF-00468 concerns the *limited* subject of Plaintiff remaining at Level IV (maximum security / disciplinary unit) following the February 14, 2014 expiration of his detention and loss of privileges.

25

> **(2)    SRF-00468 was addressed on the merits rather than on a failure to comply with MDOC PD 03.02.130.**

As noted above, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  Here I note, as Defendants point out (DE 16 at 14-15), that the March 19, 2014 Step I form for SRF-00468 (DE 16-3 at 17) – and, for that matter, the March 10, 2014 Step I form and letter (DE 1 at 93-95) - do not provide the identification information described in MDOC PD 03.02.130 ¶ R.[16]

However, non-compliance with ¶ R was not the MDOC's basis for rejecting the grievance at Step I or denying it at Step II.  As described above, the Step I and Step II grievance responses address SRF-00468 *on the merits*.  (*See* DE 16-3 at 16 & 17.)  As Plaintiff himself points out (DE 22 at 4, 14-15), "[w]hen prison officials decline to enforce their own procedural requirements and opt to consider otherwise-defaulted claims on the merits, so as a general rule will we." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010).  This is so, because it "makes a difference" when "[o]fficials at the Department of Corrections, for reasons of their

---

[16] "Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ R, effective July 9, 2007.

26

own, overlooked (or perhaps forgave) this procedural failing and chose to address [the] grievance on the merits[,]" since "[t]he point of the PLRA exhaustion requirement is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court." *Id*. at 324 (citing *Woodford*, 548 U.S. at 94-95). As the Sixth Circuit rhetorically queried, "[w]hen the State nonetheless decides to reject the claim on the merits, who are we to second guess its decision to overlook or forgive its own procedural bar?" *Id*. at 325. *See also Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000) ("we are told by defendants themselves that Camp's allegations have been fully examined *on the merits* by the ultimate administrative authority and have been found wanting. With that substantive determination having already been made at the highest level, there would be even more reason to invoke the Joseph Heller metaphor to describe any notion that Camp must jump through any further administrative hoops to get the same answer. Thus judicial consideration is now open to him.").

**(3)    The MDOC had "fair notice" of Plaintiff's claims against at least some of the defendants.**

"Although the MDOC's policy requires a grievance to include specific names, those requirements are relaxed when the purpose of the grievance has been

achieved." *McCloy v. Correction Med. Servs.*, 794 F. Supp. 2d 743, 749 (E.D. Mich. 2011). Given that the MDOC addressed SRF-0468 on the merits, rather than on a failure to comply with ¶ R of MDOC PD 03.02.130, the Court should now consider whether the policy's purpose has been achieved. *See also Burton v. Kakani*, No. 09-10893, 2009 WL 3101046, at *2, *7 (E.D. Mich. Sept. 23, 2009) ("Although Burton did not provide the Defendants' names in his grievance, the Court finds that he did substantially comply with this requirement by providing sufficient information for the prison to easily determine that Defendants were the persons being grieved.").

It is true that, in the case at bar, Plaintiff's Step I grievance and Step II appeal forms do not even list "who," let alone provide a name. In other words, the "State problem clearly" section of Plaintiff's Step I grievance form and the "Reason for Appeal" section of Plaintiff's Step II grievance form do not even describe a person." (DE 1 at 93-95, DE 1-1 at 7-8, DE 16-3 at 17, 15.) Here, it appears that at least some of the individuals who were the subjects or targets of this grievance were not named, because Plaintiff was unaware of their identities. Namely, as Plaintiff states in the first amended complaint, (a) he did not learn Zummer's true identity until around April 30, 2014 (DE 6 ¶ 115), and (b) it was not until May 27, 2014 that Plaintiff learned the identities of Defendants McLean and Potila as the ARUSs from 600 unit "who were retaliating against him and

28

harassing him[,]" (DE 6 ¶¶ 130-131; *see also* DE 6 ¶ 122).  In fact, these assertions are consistent with Plaintiff's May 24, 2014 letter to MDOC Director Heyns, to the extent it alleges that Plaintiff did not realize who Zummer was until April 28, 2014 and that both ARUSs in 600 unit do not wear name tags.  (DE 16-3 at 21-22; *see also* DE 6 ¶¶ 125-129, DE 1-1 at 47-49).

However, the Court should still conclude that the MDOC was given "fair notice" of the claims embodied in ¶¶ 41-42, 46-67 of the first amended complaint (DE 6) as to some of the defendants.  This is so, because the "resolution" section of Plaintiff's Step I grievance form mentions kiting the RUM and the ARUS "last month," although Plaintiff also specifies a date of February 24, 2014.[17]  In either event, in the "resolution" section of this grievance, Plaintiff asserts that he "kited the RUM and the ARUS . . . asking how long were they planning on keeping me back here in level four."  (DE 16-3 at 17; *see also* DE 1 at 78-80, DE 6 ¶ 48.) Given that each of the Defendants in this case has been identified as an ARUS (DE 6 ¶¶ 8-11), these titles, together with the date(s) of Plaintiff's kite to such

---

[17] "Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue . . . . If the issue is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with appropriate staff."  MDOC PD 03.02.130 ¶ P, effective July 9, 2007.

individuals,[18] provided the MDOC with "sufficient information for the prison to

identify Defendants as the persons being grieved." *Burton*, 2009 WL 3101046 at

*7. In other words, the MDOC had "fair notice" of Plaintiff's claims against the

ARUS defendants named here. *See, i.e., McBride v. Michigan Dep't of

Corrections*, No. 15-11222, 2016 WL 1156740, *4 (E.D. Mich. March 24, 2016)

(ripe for judicial review under *Reed-Bey* where grievance was addressed on the

merits but had only identified "Head RN.").

> ### iii. The amended complaint's discussion of the events of March 25, 2014 through May 1, 2015 (DE 6 ¶¶ 68-170) likely would not have been exhausted by SRF-00468, whether initiated on March 10 or 19.

Specifically, Plaintiff's Step I grievance in SRF-2014-03-0468-28B –

whether initiated on March 10, 2014 or March 19, 2014 – would not operate to

exhaust any of Plaintiff's claims which arose thereafter, such as those arising

between March 25, 2014 to April 22, 2014. (DE 6 ¶¶ 68-110.) Moreover, given

that this grievance was not exhausted until somewhere between its April 24, 2014

---

[18] The record contains evidence which buttresses Plaintiff's claims that he kited the RUM and ARUS in February 2014. As noted above, Plaintiff's amended complaint alleges he kited "RUM Zummer" on February 17, 2014, asking to be returned to Level II. (DE 6 ¶ 47.) Attached to Plaintiff's complaint are copies of February 17, 2014 kites to "RUM" and "ARUS," also asking to be returned to Level II. (DE 1 at 84.) Plaintiff also claims that he kited Warden Winn on February 24, 2014, a copy of a letter of the same date is part of the record. (DE 6 ¶ 48, DE 1 at 78-80.) Additionally, both Plaintiff's first amended complaint and his response to the instant motion describe the February 25, 2014 conversation as having been with McLean and Potila. (*See* DE 22 at 10-11, DE 6 ¶¶ 49, 50.)

arrival at Step III and the July 31, 2014 Step III response, this grievance would certainly not have exhausted administrative remedies as to claims arising thereafter, such as those arising from April 24, 2014 through May 1, 2015.  (DE 6 ¶¶ 111-169; *see also* DE at 6 ¶ 170.)[19]  As noted above, SRF-0468 concerns Plaintiff's assignment to Level IV (or the maximum security / disciplinary unit) following the February 14, 2014 expiration of his punishment on the January 27, 2014 misconduct ticket.[20]

> **f.**   **Grievance Identifier SRF-2015-08-1386-17b was not exhausted before Plaintiff's original and amended complaints were filed, as is required by 42 U.S.C. § 1997e(a).**

---

[19] The record contains evidence of Plaintiff's communications with the **Office of Legislative Corrections Ombudsman**.  (*See* DE 1 at 82; DE 1-1 at 51, 57-58, 60; DE 22 at 91, 93, 95, 97-98, 100; *see also* DE 6 ¶¶ 46, 134-138.)  However, MDOC PD 03.02.130 "does not include complaints to the Legislative Ombudsman as part of the three-step grievance appeal process."  *See Christian v. Michigan Dep't of Corr.-Health Servs.*, No. 12-CV-12936, 2013 WL 5348832, at *3 (E.D. Mich. Sept. 24, 2013) (Murphy, J., adopting report and recommendation of Michelson, J.).  Nonetheless, it is worth noting that a July 7, 2015 letter from that office, which mentions an apparent mistake by SRF staff, was followed by Plaintiff's July 15 or 21, 2015 security classification screen, which assessed both his true security level and actual placement level as "II."  (DE 22 at 95, 100.)

[20] None of this would prevent Plaintiff's ability to litigate alleged "multiple harms" by Defendants McLean, Potila, Morgan and/or Haynes which this Court concludes are exhausted by SRF-0468.  *See* DE 22 at 18-19, *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) ("The hostile action that LaFountain claims to have suffered as a result of being labeled a snitch and a sexual predator, such as being accosted in the bathroom and having his cell robbed, is merely the harm he suffered as a result of the alleged retaliation.").

This grievance concerning a March 18, 2014 "date of incident" is dated July 22, 2015 and was received at Step I on August 10, 2015.  It alleges:  "My psych, Ms. Supernaw-Halbedel, has refused to give me mental health treatment since March 19, 2014.  She informed me that due to the litigation and controversy regarding the grievances that I was filing against prison officials and staff and prospects of future lawsuit(s) that she did not want to get involved and that she no longer wanted to see me for counseling.  See attachments."  The Step I grievance response is dated August 26, 2015.  The Step II grievance appeal is dated September 3, 2015 and was received on September 9, 2015.  Warden Winn's September 23, 2015 Step II response states, among other things, "it should have been rejected at Step I as [untimely]."  (DE 16-3 at 7-12).  The grievance reached Step III on October 5, 2015, and the Step III grievance response is dated January 14, 2016.  (DE 16-3 at 6.)

This grievance clearly relates to mental health care since March 18, 2014, as discussed in the first amended complaint.  (DE 6 ¶¶ 61-65; *see also* DE 6 ¶¶ 169-170; DE 1-1 at 64.)  However, it does not appear that the substance of this grievance encompasses the claims against the *correctional officer Defendants* in Plaintiff's first amended complaint.

In addition, neither Plaintiff's May 15, 2015 original complaint (DE 1) nor Plaintiff's August 28, 2015 first amended complaint (DE 6) were filed *after* this

32

grievance was exhausted through Step III.  *See Woodford*, 548 U.S. at 93; *Porter v. Nussle*, 534 U.S. 516, 524 (2002) ("federal prisoners suing under *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388[] (1971), must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit."); *Booth v. Churner*, 532 U.S. 731, 733-34 (2001) ("The Prison Litigation Reform Act of 1995 amended 42 U.S.C. § 1997e(a), which now requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions.").  First, the July 22, 2015 date of this grievance and its August 10, 2015 receipt at Step I are both events which occurred well *after* this case was initiated on May 15, 2015.

Second, this grievance was not exhausted before Plaintiff filed the August 28, 2015 first amended complaint.  This grievance was received at Step I on August 10, 2015, and "[th]e due date shall be within 15 business days after receipt of the grievance unless an extension is granted pursuant to Paragraph S."  MDOC PD 03.02.130 ¶¶ S, X & CC, effective July 9, 2007.  Thus, the August 25 or 26, 2016 Step I response appears to have been timely, which would seem to eliminate any argument that some delay in the processing of the Step I grievance permitted Plaintiff to preemptively file his August 28, 2015 first amended complaint (DE

33

6).[21]  Here, the first amended complaint was filed in between the August 26, 2015 Step I response and Plaintiff's September 3, 2015 Step II appeal.

Finally, although the Court acknowledges that the approximate 5 month duration of this grievance (received at Step I on August 10, 2015 and Step III response dated January 14, 2016) exceeds the "general" completion period of 120 calendar days (MDOC PD 03.02.130 ¶ S), the bulk of this arguable "delay" occurred by the more than three months which passed between the October 5, 2015 receipt of this grievance at Step III and the January 14, 2016 Step III grievance response; in other words, the apparent delay occurred *after* Plaintiff had already, preemptively, filed his August 28, 2015 first amended complaint (DE 6).

Therefore, the Court should conclude that Grievance Identifier SRF-2015-08-1386-17b was not exhausted before Plaintiff initiated his case on May 15, 2015 or amended his complaint on August 28, 2015. [22]

> **g.**   **Similarly, Grievance Identifier SRF-2015-11-02220-03B, and the October 27, 2015 event seemingly**

---

[21] "If a grievant chooses to pursue a grievance which has not been responded to by staff within required time frames, including any extensions granted, the grievant may forward the grievance *to the next step* of the grievance process within ten business days after the response deadline expired, including any extensions which have been granted."  MDOC PD 03.02.130 ¶ T, effective July 9, 2007 (emphasis added).

[22] Moreover, acknowledging that "his claim for denial of access to mental health services may not be properly exhausted[,]" Plaintiff's response now seeks to "delete" this claim by filing an amended complaint.  (*See* DE 22 at 18-19.)

*underlying it, occurred after the filing of Plaintiff's original and amended pleadings.*

This grievance seemingly stems from an alleged October 27, 2015 assault of Plaintiff by Prisoner George (#202152) with "boiling hot water[.]"  (DE 22 at 108, 110; *see also* DE 24 at ¶ 185.) (DE 22 at 17-18.)  This event occurred *after* Plaintiff filed his August 28, 2015 first amended complaint (DE 6), as did the apparent December 2, 2015 resolution of the grievance at Step 1 (DE 22 at 110).  Also, it appears to be at least part of the basis of Plaintiff's claims against non-party Buczek, which Plaintiff seems to address in his pending July 15, 2016 second motion to amend his complaint.  (*See* DE 22 at 17-18; *see also* DE 22 at 104-110, DE 22-1 at 1-8 [Appendices 31-35], DE 23, DE 24 ¶¶ 173-205, 212-214.)  Thus, this grievance does not operate to exhaust the claims in Plaintiff's operative pleading.

## E.    Conclusion

As revealed in the foregoing discussion, of the 7 grievances currently on the record, only SRF-2014-03-00468-28b operates to exhaust some of Plaintiff's claims against Defendants McLean, Potila, Morgan and Haynes that are embodied in the first amended complaint.  Therefore, Plaintiff's only claims that survive summary judgment are those against McLean, Potila, Morgan and/or Haynes which concern the *limited* subject of Plaintiff remaining at Level IV (or maximum

35

security / disciplinary unit) following the February 14, 2014 expiration of his detention and loss of privileges.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections,

36

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: August 15, 2016          s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on August 15, 2016, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti

37